IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KIMBERLY DAVIS, individually and as the representative of a class of similarly situated persons;<br><br>Plaintiff,<br><br>vs.<br><br>STADION MONEY MANAGEMENT, LLC,<br><br>Defendants. | 8:19CV556<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on a motion for class certification filed by plaintiffs Kimberly Davis and Vanessa Romano ("named plaintiffs"), Filing No. 120.[1] This is an action brought pursuant to the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et. seq.* In their Second Amended Complaint, the plaintiffs allege defendant Stadion Money Management, LLC ("Stadion") breached its fiduciary duties under 29 U.S.C. § 1104(a) by allegedly allocating participant assets into Stadion portfolios rather than more suitable investments and violated 29 U.S.C. § 1106(1) and (b) by engaging in prohibited transactions with a party-in-interest, United Life Insurance Company ("United").[2]

**I.   BACKGROUND**

The plaintiffs allege that Stadion breached its fiduciary duties under ERISA to the named plaintiffs and similarly situated ERISA-plan participants by directing participant accounts into Stadion, an United affiliated investment option, despite the availability of

---

[1] Also pending is a motion for oral argument, Filing No. 139. The Court finds oral argument is not necessary and that motion will be denied.
[2] United of Omaha was dismissed as a party defendant on the stipulation of the parties. *See* Filing No. 115, Stipulation; Filing No. 117, Order.

1

superior investment options that would have better met the needs of participants. They assert that the relevant common questions that can be decided on a class-wide basis are whether Stadion was a fiduciary in connection with the challenged conduct and whether it breached its fiduciary duties. They argue that resolution of those questions turns on common proof—Stadion managed class members' accounts uniformly using the same standardized set of criteria and the same affiliated investment options.

The named plaintiffs seek to represent numerous retirement plan participants whose accounts were allegedly mismanaged by Stadion. They propose a class consisting of participants in retirement plans enrolled in Stadion's managed account services within United administered ERISA-governed retirement plans, not including defined benefit plans, for the period of time from January 25, 2013, to the present. They seek certification of the following classes under Federal Rule of Civil Procedure 23(b)(1) and/or 23(b)(3):

> a. All participants and beneficiaries whose accounts were enrolled in the Stadion Legacy managed account service within a United-administered, ERISA-governed retirement plan (other than a defined benefit plan) for any period of time after January 25, 2013 ("Legacy Class"); and
>
> b. All participants and beneficiaries whose accounts were enrolled in the Stadion StoryLine managed account service within a United of Omaha-administered ERISA-governed retirement plan (other than a defined benefit plan) ("StoryLine Class").

Filing No. 120, Motion at 1. They contend that there is, or can be, a methodology for calculating damages on a class wide basis that does not turn on individualized assessments. In addition, the named plaintiffs move the Court to appoint them as the class representatives for the classes and to appoint plaintiffs' counsel as class counsel. *Id.* at 2.

Defendant Stadion opposes class certification, first arguing that class certification should be denied because the plaintiffs cannot succeed on the merits of their claims because undisputed evidence shows Stadion lacks discretionary authority to invest outside its own portfolios and is therefore not a fiduciary under ERISA. Next, it argues that the plaintiffs lack standing to prosecute this action because the plaintiffs have not demonstrated that they, or proposed class members, suffered any loss. Finally, Stadion argues that that the named plaintiffs have failed to meet their burden to show class certification is warranted under Rules 23(a), 23(b)(1), or 23(b)(3).

## II. FACTS

Defendant Stadion is a registered investment advisor that provides portfolio management services for individual, business, and institutional clients, including its Retirement Account Management Program, in which it offers money management services to participants in employer-sponsored retirement plans. United is a life and accident insurance company that offers group variable annuity contracts to employer-sponsored retirement plans, provides recordkeeping and administrative services to defined contribution plans, and facilitates participant investment direction through its recordkeeping platform. Filing No. 137-10, Ex. A, Expert Report of Steven K. Gissiner, ("Gissiner Report") at 20.

Generally, plan sponsors (normally, employers) choose an administrator, such as United, and an associated set of services for ERISA-governed plans. Filing No. 137-10, Gissiner Report at 24. The sponsors select investment options and features such as automatic enrollment or contribution, decide if investments are offered as Qualified Default Investment Alternative ("QDIA"), and select the type of QDIA (such as target date, risk-based, or managed account) based on the requirements of the company that is

3

sponsoring the plan and its plan participants. *Id.* Those selections vary by plan. *Id.* at 38. Once enrolled and participating in a plan, individual participants generally select their own investment options and decide whether to utilize additional services made available under their respective plans. *Id.* Stadion account management is one such service, meaning that participants either defaulted into the service (based on their plan sponsor's affirmative selection) or affirmatively selected it. *Id.* at 40; *see e.g.*, Filing No. 137-4, Ex. 10, Stadion Plan Sponsor Agreement. Stadion's records reflect that some United administered plan participants did, in fact, contact Stadion and specifically direct Stadion to place their retirement plan assets in a specific risk-based portfolio. Filing No. 138-13, Ex. C, Declaration of Kerr McGowan at 4.

Stadion has agreements with United that establish the terms under which United provides administrative support to facilitate the investment services that Stadion provides to those plans and participants who contract for Stadion's investment management services. *Id.*; *see, e.g.*, Filing No. 137-2, First Amendment to Investment Manager Agreement - ERISA. Generally, the agreements provided that Stadion, as investment advisor, would manage subaccounts within one of United's separate accounts in order to provide Stadion's proprietary asset management service, known as the Stadion Retirement Portfolios to qualified retirement plans that use the Mutual of Omaha retirement product. Filing No. 137-2, Ex. 1, First Amendment to Investment Manager Agreement – ERISA at 1. *Id.* at A-1. The portfolios were to be managed consistent with age-based risk objectives.[3] *Id.* Also, Stadion's Mutual of Omaha fact sheets state that

---

[3] The Stadion Retirement Objectives are Capital Preservation, age 70+; Conservative, age 65-69; Balanced, age 60-64; Moderate Growth, age 50-59; Growth, age 35-49; and Max Growth, age under 35. Filing No. 137-2, Ex..A, Investment Manager Guidelines at A-1.

4

each portfolio's assets "can and will be allocated to cash or cash equivalent positions as a defensive measure to preserve capital." Filing No. 147-18, Ex. 17, Stadion-Mutual of Omaha Quarterly Fact Sheet September 2020 at 2.

With respect to United plans with Stadion managed account services, the agreements generally provide two managed account service options on the United platform: the "Legacy" format (beginning in 2010) comprised of six risk-based portfolios— (Max Growth, Growth, Moderate Growth, Balanced, Conservative, and Capital Preservation) ("Legacy Portfolios") and the "Storyline" format (beginning in 2016) comprised of customizable QDIA and related investment products such as exchange-traded funds ("ETFs") based on the plan sponsor's answers to a questionnaire. *See, e.g.*, Filing No. 137-4, Ex. 14, Stadion Plan Sponsor Agreement for QDIA – Conversion. The Legacy and Storyline managed account can be designated as a plan's QDIA or used as an investment option in the plan lineup. Filing No. 137-10, Gissiner Report at 17-18. Managed account expense varies from plan to plan based on each plan sponsor's varying contracts with United. *Id.* at 71-73 & Exs. 11.A-11.B (showing a range of administrative fees applicable to each plan's investment options); Filing No. 137-7, Declaration of Eric Sandquist ("Sandquist Decl.") at 3, 6.

United provided administrative and recordkeeping services for least 3,500 plans during the proposed class period, of which approximately 1,681 plans offered Stadion managed account services. Filing No. 137-10, Gissiner Report at 8, 9, 21; Filing No. 137-7, Sandquist Decl. at 5; Filing No. 155-6, Gissiner Sur-Reply Report at 14-15. As proposed, the Legacy Class would include as many as 178,000 plan participants who were enrolled in Legacy for at least some period of time between 2013 and 2019 and the

StoryLine Class would include as many as 82,000 plan participants who enrolled in StoryLine each year from 2016 to 2019. Filing No. 137-10, Gissiner Report at 23.

Plaintiff Kimberly Davis is a former participant in the Palace Entertainment 401(k) Plan ("Palace Plan"). Filing No. 108, Second Amended Complaint at 5. Through the Palace Plan, she participated in Stadion's managed account service from approximately March 2003 until February 2013. *Id.* Plaintiff Vanessa Romano is a former participant in the American Title, Inc. 401(k) Plan ("American Title Plan"). *Id.* Through the American Title Plan, she participated in Stadion's Legacy managed account service from approximately September 2011 until January 2017 and participated in Stadion's StoryLine managed account service from approximately January 2017 until March 2018. *Id.*

Both parties present expert testimony. The plaintiff's expert, Brian C. Becker, Ph.D., an economist, states in his first report that that damages can be calculated for each proposed class as a whole and for each class member using common methods applied to electronic records common to the classes. Filing No. 124, Ex. A, Expert Report of Brian C. Becker, Ph. D. ("Dr. Becker Report") at 6. He states that class losses could be calculated based on the difference between the Stadion's funds' returns during the damages period and the returns of hypothetical alternate investments ("But-For Funds") during that same timeframe. *Id.* He states that Non-Proprietary Subaccounts or alternative securities authorized through the Stadion Subaccounts are an appropriate set of possible but-for funds that are reasonably related to the claims in this case, with the understanding that the plaintiffs, the plaintiffs' counsel, or other experts retained by the plaintiffs would later identify the funds that would have been appropriate investments that a prudent manager would or could have selected for use in Stadion's managed account

service. *Id.* at 12-13. He devised a formula that he contends could be applied to any but-for fund later identified to have been a prudent alternative to the Stadion funds. *Id.* at 13.

Defendant submits the report Steven K. Gissiner. Filing No. 137-10, Ex. A, Expert Report of Steven K. Gissiner ("Gissiner Report"). In his report, he states that contrary to Dr. Becker's assertions, plan-specific and plan participant-specific circumstances preclude class certification because those circumstances cannot be accounted for using common methods applied to electronic records that are common to the Class. *Id.* at 8, 51-52. Mr. Gissiner states that variations in the investment options and fees across the United Plans that participate in Stadion's managed account services preclude a class-wide calculation of damages, in part due to differences in the number of and nature of investment options offered to each plan's participants, and to differences in the fee structures for the investment options offered to plan participants. *Id.* at 41-48

In response, Dr. Becker posits a method for calculating damages under the plaintiffs' three damages theories and offers alternative funds as comparators. Filing No. 147-26, Ex. B, Reply Declaration of Brian C. Becker, Ph. D. ("Dr. Becker Reply Decl."). He opines that the managed account service assets that Stadion allocated to the United Guaranteed Account should have been invested in certain other fixed-income investment options that were available on a given plan's menu and if such options were not provided, the assets should have been invested in an exchange-traded fund (ETF) that tracked a broad fixed income market index. *Id.* at 3. For class members in Legacy plans, Becker states they suffered damages equal to the difference in returns they would have enjoyed had the portion of their Stadion Subaccounts that were invested in index-tracking ETFs been invested instead in the lower-cost SSGA CITs available in their Plans that tracked the same indexes. *Id.* at 4. Also, he contends Legacy Class members suffered damages

7

equal to the degree to which their actual Legacy Portfolio investments (including the GIC component) underperformed a hypothetical but-for portfolio with a static asset allocation to stocks and bonds. *Id.* The alternative investments for each participant's Legacy Portfolio would be chosen such that the but-for portfolio's allocation to equity and fixed income matched the allocation of equity and fixed income within the Legacy Portfolio's blended benchmark index. *Id.* Within Storyline class, the alternative investments would be chosen such that the but-for portfolio's allocation to equity and fixed income matched the average allocation Stadion subaccounts to equity and fixed income during the class period. *Id.* at 6.

In his surreply report, Gissiner states that Dr. Becker's proposal to replace the Guaranteed Account with a bond fund increases the risks associated with individual participant portfolios and individualized inquiry into each Plan participant is necessary to ascertain whether such change would be acceptable to the participant based on his or her risk tolerance level. Filing No. 155-6, Ex. A, Sur-Reply Expert Report of Steven K. Gissiner ("Gissiner Sur-Reply Report") at 12. He also states that Dr. Becker's opinions are fundamentally flawed because his explanation for replacing certain ETFs with index funds understates how many ETFs Stadion invests in, the variation in the underlying benchmark for those ETFs, and the variation among Plans in terms of what index fund, if any, they offered and whether those funds may or may not have tracked an index comparable to the index tracked by the ETF chosen by Stadion. *Id.* at 11-12. For example, each Stadion Legacy Portfolio invested in numerous cumulative unique ETFs over the proposed class periods, and many do not track the same indices as the SSGA CITs offered on the United Platform. *Id.* at 14. Gissiner states that there is significant variation in the investment options available on each of the 1,681 plan lineups and thus,

8

individualized inquiry is necessary to ascertain whether the alternative fund that Plaintiffs and Dr. Becker select for each Stadion Portfolio has risk and return characteristics that are consistent with the risk and return characteristics of the Stadion Portfolio they seek to replace. *Id.* at 17-18. There is evidence that in three of the past seven years, the Guaranteed Account produced returns that exceed Dr. Becker's identified but-for investments. *Id.,* Sur-Reply Report at 9, Ex. 1.

## II. LAW

### A. ERISA

In order for a plaintiffs to recover under a breach of a fiduciary duty of care claim for purposes of ERISA, the plaintiff must prove a breach of fiduciary duty and loss. *See Harley v. Minn. Min. & Mfg. Co.*, 284 F.3d 901, 905 (8th Cir. 2002). Putative class members must belong to an ERISA-protected benefit plan to state a claim for relief under ERISA § 404(a)(1)(B), and they must present an injury that allows for damages under ERISA, such as those set forth in 29 U.S.C. § 1109. *Id.* Service providers involved in marketing or administering benefit plans under ERISA can become fiduciaries in three ways: (1) They may exercise discretionary authority or control over management of the plan or have authority or control over the disposition of the plan's assets; (2) They may "render[ ] investment advice" about plan assets "for a fee or other compensation[;]" or they may have "discretionary authority or discretionary responsibility" over the plan's "administration." 29 U.S.C. § 1002(21)(A); *see Cent. Valley Ag Coop. v. Leonard*, 986 F.3d 1082, 1087 (8th Cir. 2021).

ERISA "regulates the conduct of plan fiduciaries, placing certain transactions outside the scope of their lawful authority." *Lockheed Corp. v. Spink*, 517 U.S. 882, 888, (1996); *see also* 29 U.S.C. § 1106. Section 1106(b)(1) prohibits a fiduciary from "deal[ing]

9

with the assets of the plan in his own interest or for his own account." *Harley*, 284 F.3d at 908. "However, § 1108(c)(2) provides that '[n]othing in section 1106 of this title shall be construed to prohibit any fiduciary from . . . receiving any reasonable compensation for services rendered . . . in the performance of his duties with the plan." *Id.* (quoting 29 U.S.C. § 1108(a)). Before a plaintiff may establish a "prohibited transaction," it must first show that "a fiduciary caused the plan to engage in the allegedly unlawful transaction." *Lockheed Corp.*, 517 U.S. at 888; *Cent. Valley Ag Coop. v. Leonard*, 986 F.3d 1082, 1089 (8th Cir. 2021).

The Court finds that Stadion's argument that it lacks discretionary authority so as to be a fiduciary under ERISA is without merit. Stadion is an ERISA fiduciary because it invests the participants' contributions for fees as defined under the statute. Also, adherence to the investment manager Guidelines were just that, Guidelines. Further, there is evidence in the record that Stadion does have some discretionary authority.

**B.    Rule 23**

Class actions are governed by Federal Rule of Civil Procedure 23. Plaintiff "has the burden of showing that the class should be certified and that the requirements of Rule 23 are met." *Coleman v. Watt*, 40 F.3d 255, 259 (8th Cir. 1994). To justify certification of a class, plaintiffs must meet all of the requirements of Federal Rule of Civil Procedure 23(a) and satisfy one of the three subsections of Rule 23(b). *Ford v. TD Ameritrade Holding Corp.*, 995 F.3d 616, 620 (8th Cir. 2021). The Court must conduct a "rigorous analysis" of whether the requirements of Rule 23 have been met. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982).

Under Federal Rule of Civil Procedure 23(a), one or more members of a class may sue or be sued as representative parties on behalf of all members if (1) the class is so

numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy of representation"). Fed. R. Civ. P. 23. Various factors are relevant in analyzing "numerosity," such as the number of individuals in the proposed class, the nature of the action, the value of the individual claims and the inconvenience of trying each case individually. *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir.1982).

> [T]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest. *Id.* at 158.

"Typicality" under Rule 23(a)(3) suggests "'there are other members of the class who have the same or similar grievances as the [representative] plaintiff.'" *Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269, 1275 (8th Cir.1990) (quoting *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir.1977)). Generally, the typicality requirement is satisfied if the claims of all members arise from a single event or share the same legal theory. *Paxton*, 688 F.2d at 561–62. However, "[t]he presence of a common legal theory does not establish typicality when proof of a violation requires individualized inquiry." *Elizabeth M. v. Montenez*, 458 F.3d 779, 787 (8th Cir. 2006).

11

A class is appropriate for certification when its claims "depend upon a common contention of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "What matters to class certification . . . is not the raising of common 'questions'— even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* at 350 (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131-132 (2009)).

If the requirements of numerosity, commonality, typicality, and adequacy are satisfied, a plaintiff must then satisfy one of the three subsections of Federal Rule of Civil Procedure 23(b) to obtain class certification. *Id.* Those are:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>>
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b).

Whether a proposed class is "sufficiently cohesive to warrant adjudication by representation" is the focus of the predominance inquiry under Rule 23(b)(3). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). "If the plaintiffs' method of proving their claim would 'include individualized inquiries that cannot be addressed in a manner consistent with Rule 23, then the class cannot be certified.'" *Ford*, 995 F.3d at 623 (denying class certification in a case involving loss quantified as "the difference between the price at which [customers'] trades were executed and the 'better' price allegedly available from an alternative trading source") (quoting *Harris v. Union Pac. R.R. Co.*, 953 F.3d 1030, 1035 (8th Cir. 2020) (internal quotation omitted)). An individualized inquiry that is not susceptible to common answers amongst putative class members does not satisfy Rule 23(a) commonality or Rule 23(b) predominance. *Wal-Mart*, 564 U.S. at 350-51.

Under Rule 23(b)(3), a class action must also be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy. *Estate of Mahoney v. R.J. Reynolds Tobacco Co.*, 204 F.R.D. 150, 161 (S.D. Iowa 2001) (quotation omitted). "Having to engage in separate threshold inquiries for each class member prior to reaching the common issues does not promote such economy." *In re Principal U.S. Prop. Account ERISA Litig.*, 2013 WL 7218827, *29-31 (S.D. Iowa Sept. 30, 2013). Litigation that

13

requires complex individualized determinations as to the amount of monetary damages is not suited certification under Rule 23(b). See Amara v. Cigna Corp., 775 F.3d 510, 523 (2d Cir. 2014).

## IV. DISCUSSION

The Court will not address the defendant's argument that certification should be denied because the plaintiffs cannot succeed on the merits of their claims. That is a matter that is properly addressed in a motion for summary judgment. Further, Stadion has not shown as a matter of law that it is not a fiduciary under ERISA. There are issues of fact as to the amount of discretion the investment manager had. In any event, Stadion is arguably a fiduciary under 29 U.S.C. § 1002(21)(A)(ii) as a service provider that renders investment advice about plan assets for a fee or compensation.

The Court finds that the defendant's argument that the plaintiffs lack standing is without merit. This Court addressed that issue in its Memorandum and Order on the defendant's motion to dismiss and that finding is the law of the case. See Filing No. 105. Moreover, the defendant has not persuaded the Court that it should reverse its earlier finding. If damages can be proved, the plaintiffs will have suffered a concrete injury redressable in this action.

Nevertheless, the Court finds the motion for class certification should be denied. The plaintiffs have not sustained their burden to show that a class action is warranted under Rule 23. The plaintiffs do not challenge the defendant's contentions with respect to the number of plans and participants. The joinder of that number of disparate plaintiffs would be impracticable and, accordingly, the Court is satisfied that the proposed Classes run afoul of the numerosity proscription. However, the plaintiffs have not satisfied the requirements of commonality and typicality under Rule 23(a), nor have they shown

14

predominance and superiority under Rule 23(b)(3). The undersigned concludes that resolution of the claims through a class action would create case management issues and would be an inefficient allocation of judicial resources due to the individualized nature of the claims. Given the individual inquiries necessary to determine whether each individual plan or plan participant actually sustained an economic loss, Rule 23(b)(3)'s predominance requirement has not been satisfied. The undersigned likewise finds that this action fails to satisfy Rule 23(b)(3)'s superiority requirement.

In this case, the prevalence of these individualized inquiries precludes class certification under Rule 23(b)(3). Plaintiffs have not reliably identified alternative investment benchmarks in their methodology. Identifying appropriate alternative investment comparators would entail examination of thousands of plans and differing investment lineups and then the Court would have to determine how those alternative investments' varying risk attributes, charges, and fees affected their returns at varying points in time. Because of the many individualized differences between plans and class members, it is unlikely that there could be a classwide damages calculation. The Court finds that "despite advances in technology, individual evidence and inquiry is still required to determine economic loss for each class member." *See, e.g., Ford*, 995 F.3d at 623 (noting that "[a]dvanced computing power can expedite that determination, but it cannot change its underlying nature by converting individual evidence into common evidence.")

Although the plaintiffs contend that Stadion's primary defense turns on a plain reading of standardized form agreements that applied uniformly, the Court finds that is not the case. In the present case, the crucial questions are "did the defendant breach its fiduciary duties " and "what effect did this alleged breach have on each class member." It is the second question that is problematic for purposes of class certification, as it

requires individualized analysis to even determine who should be included in the class, and also to determine the effect of Stadion's alleged breach on each putative class member.

Although the Court may be able to answer—with common proof—the common question of whether Stadion was a fiduciary with discretion in connection with the challenged conduct, the Court cannot determine whether and to what extent Stadion breached any such fiduciary duty without considering individual circumstances such as plan terms, coverage, investment line-ups, anticipated risk, and the like. Those determinations cannot be made on common proof. The Court cannot evaluate the propriety of Stadion's decisions without considering the individual employer plans. The reasonableness of Stadion's conduct will depend upon the terms of individually negotiated contracts, and may depend on such considerations as the fees plans agree to pay and the intended objectives of a particular fund in the context of a plan's overall investment portfolio. For example, a reasonable guaranteed minimum for an investment vehicle used solely for the purpose of maximizing investment returns will be different than the reasonable minimum for one intended as a plan's hedge against investment risk.

The question of whether a certain rate of return is reasonable will not generate a common answer throughout the proposed class. Therefore, there is no potential for inconsistent or varying adjudications and certification under Rule 23(b)(1) is likewise inappropriate.

Although the plaintiffs argue that damages are ascertainable on a classwide basis because their purported expert "provides a methodology for calculating damages that involves measuring the overall difference between the actual returns of the Stadion subaccounts and the returns of hypothetical alternate investments," they did not identify

these "hypothetical alternative investments," or "but-for-funds" with any specificity, nor identify which, if any, would have been available to Stadion at the time.

The plaintiffs have not provided the Court with any evidence as to whether a prudent fiduciary in like circumstances would have prospectively selected an alternative fund or would have had a reason to do so. The fact a fund ultimately performs better does not establish that the choice of a certain fund was imprudent at the outset. The choice of a particular fund is not flawed merely because another fund ended up performing better. Decisions made in hindsight are of little use in these circumstances.

Class certification is even less appropriate with respect to the StoryLine Class because each participant received a "personalized" investment strategy based on specifically tailored for each plan and participant based on plan sponsor's and/or participants' responses to questionairres. Without examining each plan sponsor's and/or participant's questionnaire, investment objective, unique portfolio, and alternative options, the Court would be unable to determine whether Stadion had breached any duty or whether its choices were imprudent. Accordingly,

**IT IS ORDERED THAT:**

1.   The plaintiffs' motion for class certification (Filing No. 120) is denied.

2.   The defendant's motion for oral argument (Filing No. 139) is denied

Dated this 27th day of September 2021.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge